# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KESIAH CLARK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 20 C 6596 |
| v. | ) |
| | ) Magistrate Judge Finnegan |
| EVERGREEN LIVING & | ) |
| REHAB CENTER, LLC D/B/A | ) |
| AVANTARA OF EVERGREEN PARK, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Following the termination of her employment, Plaintiff Kesiah Clark ("Plaintiff") sued her former employer, Defendant Evergreen Living & Rehab Center, LLC, d/b/a Avantara of Evergreen Park ("Defendant"), alleging disability discrimination (Count I), failure to accommodate (Count II), and retaliation (Count III) in violation of Title I of the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12101, *et seq*. (Doc. 1). Defendant moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a viable claim for relief. (Doc. 8).

Defendant argues that the discrimination and failure to accommodate claims must be dismissed because Plaintiff's condition (uterine fibroids) does not qualify as a "disability" under the ADA. Defendant additionally contends that all three claims should be dismissed because Plaintiff was not a "qualified individual" within the meaning of the ADA since she requested four to six weeks of medical leave. Defendant further asserts that the discrimination and failure to accommodate claims should be dismissed because the conclusory allegations do not sufficiently allege that Plaintiff had a disability or was a

qualified individual, as the ADA requires. Finally, even if the retaliation claim survives dismissal, Defendant asks to narrow the requested relief to eliminate compensatory damages, punitive damages, and a jury trial. For reasons stated below, the motion is granted in part and denied in part.

## DISCUSSION

I.  **Legal Standards**

   A.  **Rule 12(b)(6) Motion**

In resolving a Rule 12(b)(6) motion to dismiss, the Court must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff['s] favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016). "To survive a motion to dismiss, the plaintiff must do more in the complaint than simply recite elements of a claim; the 'complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Zellner v. Herrick*, 639 F.3d 371, 378 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Warciak v. Subway Restaurants, Inc.*, 949 F.3d 354, 356 (7th Cir. 2020). "'[A] plaintiff must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Defender Sec. Co. v. First Mercury Ins. Co.*, 803 F.3d 327, 335 (7th Cir. 2015) (quoting *Reger Development, LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010)).

B.  **ADA Claims**

The ADA prohibits an employer from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *Roberts*, 817 F.3d. at 565. A "qualified individual" is able to "perform the essential functions" of the job with or without a "reasonable accommodation[.]" 42 U.S.C. § 12111(8). To state a claim, the plaintiff must allege that: (1) she is disabled; (2) she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the defendant took an adverse job action against her because of her disability or failed to make a reasonable accommodation. *Mack v. Chicago Transit Auth.*, No. 17 C 6908, 2020 WL 3414952, at *2 (N.D. Ill. June 22, 2020) (quoting *Stevens v. Ill. Dep't. Transp.*, 210 F.3d 732, 736 (7th Cir. 2000)).

The ADA also contains a retaliation provision that prohibits discrimination "against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). "'Employers are forbidden from retaliating against employees who raise ADA claims regardless of whether the initial claims of discrimination are meritless.'" *Koty v. DuPage Cty.*, 900 F.3d 515, 519 (7th Cir. 2018) (quoting *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011)); *see also Pack v. Illinois Dep't of Healthcare & Fam. Servs.*, No. 13 C 8930, 2015 WL 507555, at *6 (N.D. Ill. Feb. 5, 2015). To state a claim, the plaintiff must allege that: (1) she engaged in a statutorily protected

3

activity; (2) the defendant was aware of the protected activity; (3) she suffered an adverse employment action; and (4) a causal connection exists between the protected activity and the adverse action. *Pack*, 2015 WL 507555, at *6 (citing *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 786 (7th Cir. 2007)).

## II.     Analysis

### A.     Disability Within the Meaning of the ADA

With regard to the first element of the discrimination and failure to accommodate claims in Counts I and II, respectively, Defendant challenges the adequacy of the allegations that Plaintiff is disabled within the meaning of the ADA. (Doc. 9, at 13-14). The ADA defines a disability as a physical or mental impairment that substantially limits one or more major life activities, a record of such an impairment, or being regarded as having such an impairment. 42 U.S.C. § 12102(1). The ADA contains a non-exhaustive list of major life activities that includes, among others, walking and standing. *Id.* at § 12102(2)(A).

Plaintiff alleges that she "has an actual disability, has a record of being disabled, and/or is perceived as being disabled by Defendant." (Doc. 1, at ¶¶ 16, 34, 41). She was employed by Defendant full-time as a registered nurse. (*Id.* at ¶ 14). In early 2019, Plaintiff began experiencing abnormally heavy menstrual bleeding and severe stomach cramps "due to her disability." (*Id.* at ¶ 19). The cramping "substantially limited" her daily life activities of walking and standing. (*Id.* at ¶ 20). Plaintiff notified Supervisor Anita Johnson and Director of Nursing Richard Ross on days when cramping caused her to become physically ill. (*Id.* at ¶ 21). When Plaintiff was diagnosed with leiomyomas of the uterus in May 2019, she "informed Defendant" that she needed surgery "to treat her

4

condition" and "notified Mr. Ross directly of her condition" and need for surgery. (*Id.* at ¶ 22).

At a surgical consultation on May 10, 2019, Plaintiff was scheduled for an abdominal myomectomy on July 10, 2019. (*Id.* at ¶ 23). "Immediately following" that appointment, Plaintiff informed Mr. Ross of the upcoming surgery. (*Id.* at ¶ 24). Sometime after that, Plaintiff provided Defendant's human resources department with medical leave request paperwork that her doctor had completed, and she sought "a brief medical leave of absence to undergo surgery for her disability." (*Id.* at ¶¶ 25, 26). On June 10, 2019, Plaintiff told Ms. Johnson of the upcoming surgery on July 10, 2019 and asked to begin medical leave on July 9, 2019. (*Id.* at ¶ 27). On July 10, 2019 (the day of the surgery), Defendant terminated Plaintiff's employment "under pretext" rather than granting the request for leave. (*Id.* at ¶ 28).

### 1. Uterine Fibroids

Defendant states that leiomyomas of the uterus are also known as uterine fibroids (Doc. 9, at 7 n.1), and Plaintiff does not dispute this. Defendant argues that uterine fibroids cannot qualify as a disability under the ADA absent allegations that they cause infertility, which Plaintiff does not make. (Doc. 9, at 13). Plaintiff tersely responds that she is disabled and limited in "one or more . . . major life activities" and, without citation to authority, states that whether the "Complaint constitutes a disability . . . is better suited for discovery and later phases of litigation . . . ." (Doc. 11, at 5). As Defendant notes (Doc. 12, at 12), Plaintiff fails to address the cases on which Defendant relies regarding uterine fibroids. Nonetheless, the Court finds that Defendant reads those cases too broadly.

5

Contrary to Defendant's assertion, the cases do not categorically hold that only uterine fibroids resulting in infertility may constitute a disability. Rather, in each case, the plaintiff failed to adduce evidence of, or allege, substantial impairment of a major life activity. *See Munoz v. Selig Enterprises, Inc.*, 981 F.3d 1265, 1273-74 (11th Cir. 2020) (explaining that court could not conclude ovarian cysts, uterine fibroids, and endometriosis substantially limited plaintiff's ability to sleep, work, and reproduce because summary judgment record did not contain evidence of timing, frequency, and duration of her impairments); *Jeudy v. Att'y Gen., Dep't of Justice*, 482 Fed. Appx. 517, 520 (11th Cir. 2012) (finding that plaintiff failed to raise genuine issue on summary judgment that pregnancy-related pain due to fibroids qualified as disability absent evidence of any impact on her ability to walk, stand, or otherwise perform major life activities); *Abel v. NYC, Human Res. Admin.*, No. 10 C 295, 2011 WL 812309, at *5 (S.D.N.Y. Mar. 3, 2011) (concluding that plaintiff failed to plead facts plausibly alleging disability where she described her condition as uterine fibroids, but did not identify any major life activity impeded by her illness and stated only that her condition required leave and surgery); *see also Willis v. Career Educ. Corp.*, No. 12 C 7662, 2015 WL 3859191, at *6 (N.D. Ill. June 19, 2015) (finding that while plaintiff adduced enough evidence of disability where she was substantially limited in major life activity of procreating at least before surgery, summary judgment record did not support her contention that uterine fibroids substantially impaired daily activities of walking, lifting, sleeping, extended sitting, and caring for herself before surgery even if she occasionally missed work due to discomfort from painful menstrual periods). As Defendant acknowledges (Doc. 9, at 13), Plaintiff here alleges that cramping from the alleged disability "substantially limited [her] daily life activities such

as standing and walking." (Doc. 1, at ¶ 20). And Defendant advances no other argument that these allegations are inadequate to set forth a disability.

Defendant likewise argues that Plaintiff's allegations of having a record of disability also fail since uterine fibroids do not qualify as a disability. (Doc. 9, at 14).[1] Because the foregoing cases establish that uterine fibroids may constitute a disability under some circumstances, this argument is equally unavailing.

### 2. Sufficiency of Allegations

Defendant's alternative basis for dismissing the discrimination and failure to accommodate claims in Counts I and II is that the allegations of Plaintiff having "a record of being disabled" and "being perceived as disabled" also "are far too conclusory . . . ." (Doc. 9, at 14-15). Beyond those statements, Plaintiff relies on additional allegations indicating that Defendant was "on notice of her disability." (Doc. 11, at 5). For example, Plaintiff alleges that she: notified Ms. Johnson and Mr. Ross when she was physically ill from cramping; "informed Defendant" that she needed surgery "to treat her condition" and "notified Mr. Ross directly of her condition" and need for surgery in May 2019; informed Mr. Ross of her upcoming surgery immediately after a May 10, 2019 medical appointment; later submitted medical leave request paperwork for her surgery; and told Ms. Johnson of the upcoming surgery on June 10, 2019 and asked to begin medical leave on July 9, 2019 (the day before the surgery). (Doc. 1, at ¶¶ 21-27). Defendant ignores these specific allegations and proffers no reason why they do not sufficiently support the

---

[1] A plaintiff has a record of a disability if she "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R § 1630.2(k)(1).

existence of a disability based on Plaintiff having a record of, or being regarded as having, an impairment.

For all of these reasons, the Complaint's allegations that Plaintiff is disabled within the meaning of the ADA are sufficient to withstand dismissal of the discrimination and failure to accommodate claims.

B.     **Qualification to Perform Essential Functions Under the ADA**

1.     **Medical Leave**

Turning to the second element of the discrimination and failure to accommodate claims in Counts I and II, Defendant argues that an employee who requires "long-term" medical leave—as it asserts Plaintiff did—cannot work and thus is not a qualified individual for purposes of the ADA. (Doc. 9, at 11-13). Here, the Complaint alleges that Plaintiff provided Defendant's human resources department with medical leave request paperwork completed by her doctor, and she sought "a brief medical leave of absence to undergo surgery for her disability." (Doc. 1, at ¶¶ 25, 26).[2] In support of the motion to dismiss, Defendant submits Plaintiff's medical leave request paperwork, which was referred to in—but not attached to—the Complaint. That form (signed by Plaintiff's physician) states: the "[p]robable duration of condition" was from July 10, 2019 to August 23, 2019; Plaintiff would be admitted to the hospital on July 10, 2019 for abdominal myomectomy surgery; and she "will need 4 to 6 weeks post op recovery before returning

---

[2]     Plaintiff now adds that Defendant "failed to engage in the interactive process" and did not notify her of any issue with the leave request or present "any alternative options" (Doc. 11, at 1, 6); however, the Complaint makes no such allegations. The Court declines to consider these additional allegations since Plaintiff may not amend her pleading in a brief opposing a motion to dismiss. *See Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) (explaining that plaintiff's attempt to supplement complaint in his brief was "fruitless") (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).

8

to work w/o restrictions." (Doc. 9-1, at 3-5). In response to a question asking to "identify the job functions the employee is unable to perform[,]" the doctor wrote: "[a]ll job functions for at least 4 to 6 weeks for post op recovery[.]" (*Id.* at 3).[3]

As an initial matter, Defendant asserts that the Court may consider the medical leave request paperwork on this motion to dismiss because Plaintiff referenced it in the Complaint and it is central to her claims. (Doc. 9, at 7-8 n.2). The Court agrees. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("It is well settled that in deciding a Rule 12(b)(6) motion, a court may consider 'documents attached to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to his claim.' . . . In effect, the incorporation-by-reference doctrine provides that if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment. The doctrine prevents a plaintiff from 'evad[ing] dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that prove[s] his claim has no merit.'") (quotations omitted); *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431-32 (7th Cir. 1993).[4]

Based on the medical leave request form, Defendant contends that Plaintiff was not qualified to perform the essential functions of her job because the requested four- to

---

[3]   The doctor's signature (and other identifying information) are redacted. (Doc. 9-1, at 2, 5).

[4]   As Defendant notes (Doc. 12, at 11), Plaintiff does not disagree and now claims that she "requested a medical leave of approximately four weeks as a reasonable accommodation under the ADA." (Doc. 11, at 1). "[E]laborations" in a brief opposing dismissal may be considered "so long as . . . 'consistent with the pleadings.'" *Heng v. Heavner, Beyers & Mihlar, LLC*, 849 F.3d 348, 354 (7th Cir. 2017) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)).

six-week leave cannot constitute a reasonable accommodation. (Doc. 9, at 12). As the Seventh Circuit has explained, "[t]he ADA is an antidiscrimination statute, not a medical-leave entitlement[,]" which forbids discrimination against a qualified individual with a disability. *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 479 (7th Cir. 2017). Pursuant to the ADA, a reasonable accommodation "is expressly limited to those measures that will enable the employee to work." *Id.* "An employee who needs long-term medical leave *cannot* work and thus is not a 'qualified individual' under the ADA. *Id.* (quoting *Byrne v. Avon Prods., Inc.*, 328 F.3d 379, 381 (7th Cir. 2003)) (emphasis in original).

The Seventh Circuit has consistently affirmed summary judgment for the employer where the plaintiff sought multiple months of leave as an accommodation. *See McAllister v. Innovation Ventures, LLC*, 983 F.3d 963, 972 (7th Cir. 2020) (plaintiff needed four months of leave—on top of two and a half months of prior leave—which "is plainly not a reasonable accommodation."); *Severson*, 872 F.3d at 478-79, 481 (three-month leave of absence—after FMLA leave had expired—could not be reasonable accommodation); *Byrne*, 328 F.3d at 380-81 (plaintiff who was "incapable of working" from November 1998 through mid-January 1999 was not qualified); *Golden v. Indianapolis Housing Agency*, 698 Fed. Appx. 835, 837 (7th Cir. 2017) (plaintiff's "request for six months of medical leave in addition to the twelve weeks required by the FMLA removes an employee from the protected class under the ADA . . . ."); *Hamm v. Exxon Mobil Corp.*, 223 Fed. Appx. 506, 508-09 (7th Cir. 2007) (plaintiff who sought additional month off work after being on leave for nearly three years was not qualified, and record did not establish he would have succeeded in returning to work).

But the Seventh Circuit has nonetheless made clear that, in certain situations, a short medical leave may constitute a reasonable accommodation. *Severson*, 872 F.3d at 481. Specifically, the court observed:

> *Byrne* leaves open the possibility that a brief period of leave to deal with a medical condition could be a reasonable accommodation in some circumstances. 328 F.3d at 381; *Haschmann v. Time Warner Entm't Co.*, 151 F.3d 591, 602 (7th Cir. 1998). For example, we noted that "[t]ime off may be an apt accommodation for intermittent conditions. Someone with arthritis or lupus may be able to do a given job even if, for brief periods, the inflammation is so painful that the person must stay home." *Byrne*, 328 F.3d at 381. Intermittent time off or a short leave of absence—say, a couple of days or even a couple of weeks—may, in appropriate circumstances, be analogous to a part-time or modified work schedule, two of the examples listed in § 12111(9).

*Id.*[5] The Seventh Circuit has described "a modest two to four weeks of leave" as a reasonable accommodation. *McAllister*, 983 F.3d at 972 (citing *Haschmann*, 151 F.3d at 595); *Haschmann*, 151 F.3d at 595, 598, 600-02 (affirming judgment on jury verdict for plaintiff who sought second two- to four-week leave of absence, which "was a clearly defined period" and her doctor's "estimated time of treatment").

At the pleadings stage of these proceedings, the Court is not persuaded that the medical leave form requesting four to six weeks of time off renders Plaintiff not qualified under the ADA as a matter of law. While some courts have dismissed a complaint

---

[5] Section 12111(9) provides that a reasonable accommodation may include:
> . . . job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9)(B).

11

because an employee was deemed not qualified based on the requested accommodation of extended leave, the length of the leave sought in those cases (three or more months) was much longer than the leave at issue here. *See, e.g., United States ex rel. Sibley v. Univ. of Chicago Med. Ctr.*, 486 F. Supp. 3d 1210, 1223-24 (N.D. Ill. 2020) ("The doctor's note attached to the Amended Complaint establishes that [plaintiff] was not ADA eligible because she was not able to work at all and would not be able to work for almost three months."); *Lee v. Chi. Transit Auth.*, No. 12 C 9180, 2016 WL 6680483, at *4 (N.D. Ill. Nov. 14, 2016) (determining that plaintiff was not qualified where only suggested accommodation was additional leave, and he had already taken off approximately nine months followed by another approximately five months), *aff'd by* 696 Fed. Appx. 752 (7th Cir. 2017). Nor is this a case where dismissal is warranted because Plaintiff plead herself out of court by expressly alleging that she "was and remains unable to work." *Jahnke v. Discover Prods., Inc.*, No. 18 C 5259, 2019 WL 2248528, at *2-3 (N.D. Ill. May 24, 2019).

"'Whether a requested accommodation is reasonable or not is a highly fact-specific inquiry and requires balancing the needs of the parties.'" *McAllister*, 983 F.3d at 967-68 (quoting *Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002)). Not surprisingly, most of the cases that the parties cite and this Court has considered were decided at the summary judgment stage, as noted above. *See also Jenkins v. Chi. Transit Auth.*, No. 15 C 8415, 2020 WL 868535, at *3, 8 (N.D. Ill. Feb. 20, 2020) (medical leave of 6 to 8 weeks to allow fractured toe to heal was not reasonable accommodation since "[e]ven assuming the relevant period was only six weeks, that constitutes long-term leave under the framework articulated in *Severson*."); *cf. Willis*,

2015 WL 3859191, at *8 n.10 (noting in dicta that defendants failed to argue six weeks of time off was not reasonable accommodation contemplated in *Byrne*).

Even the case that Defendant relies on most heavily, *Davidson v. State Collection Serv., Inc.*, 824 Fed. Appx. 424 (7th Cir. 2020), was decided on summary judgment. In that case, the plaintiff—after previously exhausting all available FMLA leave—requested leave for back surgery, "estimating that it would entail about four weeks of recovery time." *Davidson*, 824 Fed. Appx. at 426. The plaintiff's doctor then provided a note that failed to specify the amount of leave required and instead stated "her return-to-work status would be updated at her first post-operation appointment." *Id.* The physician eventually cleared Plaintiff to return to work nearly two months after the surgery. *Id.* at 426-27. The Seventh Circuit considered the length of the leave both that the plaintiff initially had estimated, and that her doctor ultimately required, and concluded that she "could not do her job during a multi-month absence." *Id.* at 427. Thus, contrary to Defendant's suggestion (Doc. 9, at 12), the result in *Davidson* did not turn solely on the plaintiff's stated expectation that she would be absent for four weeks but rather on the overall factual record, including that her doctor did not permit her to resume working for almost two months.

In the case at hand, this Court lacks the benefit of any facts beyond those alleged in the Complaint and found in the medical leave request form. Based on the latter document, Plaintiff's physician stated that she would be unable to perform all job functions without restrictions for at least four to six weeks. This leaves open the possibility that Plaintiff could have returned to work after four weeks without restrictions, or perhaps even earlier with some restrictions that could have been accommodated. In other words, the

Complaint and medical leave paperwork do not establish that Plaintiff necessarily was unable to work with or without restrictions for a "multi-month" period such that she could not be a qualified individual under the ADA. *Contrast Sibley*, 486 F. Supp. 3d at 1223-24 (doctor's note attached to pleading established that plaintiff could not work and would be unable to do so for nearly three months). More facts are necessary to determine this.[6]

### 2. Sufficiency of Allegations

Defendant next argues that the allegations in the Complaint are too conclusory to sufficiently allege that Plaintiff is qualified to perform the essential functions of her job with or without a reasonable accommodation as the ADA requires. (Doc. 9, at 10-11). "'Because disability, unlike race, can often be a legitimate consideration in employment decisions, a complaint alleging discrimination under the ADA must plead with adequate specificity that the plaintiff is qualified to perform the essential functions of the job with or without reasonable accommodation.'" *Mack*, 2020 WL 3414952, at *3 (quoting *EEOC v. Supervalu, Inc.*, 674 F. Supp. 2d 1007, 1014 (N.D. Ill. 2009)). In the ADA context, "simply pleading that one is a qualified individual with a disability is 'precisely the type of conclusory, formulaic assertion that was disapproved of by Twombly[.]'" *Id.* (quoting *Supervalu*, 674 F. Supp. 2d at 1011).

Plaintiff alleges that she is "a qualified individual" and "was able to perform the essential functions of her job with or without accommodations." (Doc. 1, at ¶¶ 16, 18, 33, 41). In her response brief, Plaintiff reiterates that she is "a qualified individual" and simply

---

[6] Defendant additionally contends that Plaintiff's "retaliation claim amounts to nothing more than a re-casted failure-to-accommodate claim," and so must be dismissed because the ADA did not require accommodation of her "request for extended leave[.]" (Doc. 12, at 8-11, 13-14; *see* Doc. 9, at 9). Because the Court denies the motion to dismiss the failure to accommodate claim based on the length of the leave requested, it likewise denies the motion to dismiss the retaliation claim on this ground for the same reasons.

14

concludes that her claim "is well-pled." (Doc. 11, at 5). She ignores, however, that the Complaint is devoid of facts regarding the ability to perform the essential functions of her job with or without a reasonable accommodation.

Such a bare recitation of the legal standard is not enough to plead that Plaintiff is a qualified individual under the ADA. *See Lee*, 2016 WL 6680483, at *4 (explaining that plaintiff failed to allege what his job duties were, which duties he could perform, and which duties he could not perform, leaving the court to speculate as to essential functions of his job as transportation manager, whether he was qualified to perform those functions with or without reasonable accommodation, and what such accommodation might be); *cf. Gogos v. AMS Mechanical Sys., Inc.*, 737 F.3d 1170, 1173 (7th Cir. 2013) (finding that plaintiff adequately plead he was qualified to perform essential functions of his job where he had 45 years of experience as pipe welder and worked for defendant as welder and pipe fitter for more than one month before being fired); *Kelley v. Chicago Transit Auth.*, No. 20 C 2881, 2021 WL 698482, at *3-4 (N.D. Ill. Feb. 23, 2021) (determining that plaintiff adequately alleged he was qualified to perform his duties by stating he had been doing job of electrician for defendant for three years before diabetic incident, shortly after which doctor cleared him to return to work); *Mislap v. City of Chicago*, No. 16 C 4202, 2018 WL 488270, at *1, 5 (N.D. Ill. Jan. 19, 2018) (agreeing that allegation plaintiff was qualified to perform essential functions of his job with or without reasonable accommodation was threadbare recital of element of cause of action; but explaining that plaintiff also alleged he had been employed by defendant for approximately 17 years then assigned to light duty position and allowed intermittent leave for physical therapy since injury around eighth

year of his employment, suggesting he had been performing essential functions of his job first without and later with accommodation).

For the foregoing reasons, the Complaint fails to adequately allege that Plaintiff is qualified to perform the essential functions of her job with or without a reasonable accommodation under the ADA as necessary to state claims for discrimination and failure to accommodate.

### C. Available Relief for Retaliation

Apart from moving for dismissal of the retaliation claim based on the duration of Plaintiff's leave (*see* Note 6, *supra*), Defendant does not challenge the sufficiency of this claim but moves to narrow the potential relief. (Doc. 9, at 15-16; Doc. 12, at 14). Specifically, Count III seeks compensatory and punitive damages for retaliation, and the Complaint includes a jury demand for "all triable issues . . . ." (Doc. 1, at ¶¶ 51, 52; *id.* at 7). As Defendant asserts (Doc. 9, at 15), " . . . compensatory and punitive damages are not available remedies for ADA retaliation claims and, therefore, there is no right to a jury trial for such claims." *Ammons v. Chicago Bd. of Educ.*, No. 16 C 4884, 2019 WL 1281996, at *2 (N.D. Ill. Mar. 20, 2019) (citing *Kramer v. Banc of American Securities, LLC*, 355 F.3d 961, 965-66 (7th Cir. 2004)). And, as Defendant notes (Doc. 12, at 14), Plaintiff does not dispute this. Therefore, Plaintiff is not entitled to compensatory damages, punitive damages, or a jury trial on the ADA retaliation claim.[7]

---

[7] A plaintiff bringing a retaliation claim under the ADA is entitled only to remedies that are "equitable in nature[,]" which includes an injunction, reinstatement, back pay, or other "appropriate" equitable relief. *Kramer*, 355 F.3d at 964-66 (citing 42 U.S.C. § 2000e–5(g)(1)); *Ammons*, 2019 WL 1281996, at *3. Count III also complains of "loss of pay, benefits, and prestige" (Doc. 1, at ¶ 50), and the Complaint otherwise seeks back wages, back benefits, front pay, liquidated damages, and attorneys' fees. (*Id.* at 7). Defendant's motion to dismiss does not challenge the remaining relief.

**CONCLUSION**

For the reasons set forth above, Defendant's Motion to Dismiss (Doc. 8) is granted in part and denied in part as follows. Counts I and II of the Complaint are dismissed without prejudice and with leave to replead. By August 2, 2021, Plaintiff may file an amended complaint to cure the deficiencies described in this opinion. Count III's requests for compensatory and punitive damages are stricken, as is any request for a jury trial on this count.

ENTER:

Dated: July 12, 2021

SHEILA FINNEGAN
United States Magistrate Judge